# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SONDRA MARIE WITCHER,<br><br>     Petitioner,<br><br> v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security<br>Administration,<br><br>     Respondent. | Case No. 4:18-CV-00220-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Pending before the Court is Sondra Marie Witcher's Petition for Review of the

Respondent's denial of social security benefits, filed May 17, 2018. (Dkt. 1.) The Court

has reviewed the Petition, the Answer, the parties' memoranda, and the Administrative

Record (AR). For the reasons that follow, the decision of the Commissioner will be

affirmed.[1]

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. Pursuant to
Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for
Acting Commissioner Nancy A. Berryhill as the Respondent in this suit. No further action needs
to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on December 4, 2014, alleging disability beginning January 1, 2009. This application was denied initially and on reconsideration, and a hearing was held on November 30, 2016, before Administrative Law Judge (ALJ) Lloyd E. Hartford. After hearing testimony from Petitioner and Vocational Expert Kent Granat, the ALJ issued a decision finding Petitioner not disabled on February 22, 2017. Petitioner timely requested review by the Appeals Council, which denied her request for review on March 16, 2018.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

Petitioner has a high school equivalent (GED) education. Petitioner's prior work experience includes working at a grocery store beginning in 1995 and, most recently, as a manager of the deli department at the grocery store throughout 2009 until October 2010. (AR 235.) Petitioner has not been employed since leaving that position. Petitioner's date last insured was December 31, 2015. At the time of the November 30, 2016 hearing, Petitioner was 51 years of age.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must

---

Security Act, 42 U.S.C. § 405(g).

be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had engaged in substantial gainful activity from January 1, 2009, through October 31, 2010. However, the ALJ found Petitioner has not engaged in substantial gainful activity since November 1, 2010, making that the disability onset date. (AR 16.) At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's degenerative disc disease of the lumbar spine and degenerative joint disease of the knees, ankles, and left foot constitute severe impairments within the meaning of the Regulations. (AR 16.) However, the ALJ found Petitioner's allegations regarding mild obesity, right (lateral) elbow epicondylitis, and depression are non-severe impairments under the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for any listed impairments. The ALJ considered Listings 1.02 (Major Dysfunction of a Joint), 1.03 (Reconstructive Surgery of a Major Weight Bearing Joint), and 1.04 (Spine Disorder). (AR 17-18.) If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ determined that, up through her date last insured of December 31, 2015, Petitioner retained the RFC to perform sedentary work as defined by 20 C.F.R. § 404.1567(a) and § 416.967(a), with the limitations that she cannot frequently climb

ramps or stairs; balance, kneel, crouch, or crawl; and cannot climb ladders, ropes, or scaffolds. (AR 18-19.)

In making the RFC determination, the ALJ found that Petitioner's impairments could reasonably be expected to cause the symptoms she alleges, but that her statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record. (AR 19.) The ALJ considered and discussed the opinions of Petitioner's various treating providers contained in the medical records: Dr. Jared Price, DO; Dr. Chris Johnson, DO; Dr. Greg West, MD; Dr. Gail Fields, DO; Dr. Travis Nielsen, DO; Dr. Marc Porot, MD; Gary Myers, PA; Dr. Prashanth Manjunath, MD; Richardson Weldon, PA; and Holly Zoe, MD. (AR 18-21.)

The ALJ gave little weight to Dr. Fields' medical source statements that Petitioner would miss more than four days of work per month, needed a job where she could sit and stand/walk at will for a maximum of two hours each day in a 8-hour workday, could occasionally lift less than ten pounds, and could rarely perform postural activities. (AR 19-20.) The ALJ found Dr. Fields' opinion was not supported by other evidence in the record; namely, the several other doctors who have ongoing treatment relationships with Petitioner who report very different clinical findings. Additionally, the ALJ found Dr. Fields is not a specialist in mental health and he did not treat Petitioner for depression or suggest any finding which would lead to a functional restriction.

The ALJ discussed the medical records from each of the other treating doctors and providers who found that Petitioner's conditions were "stable" and being successfully

treated and managed with medication. (AR 19-21.) In particular, the ALJ detailed the records from Dr. Nielsen and Dr. Porot, both of whom had an ongoing treatment relationship with Petitioner during the time of alleged disability and both of whom reported that Petitioner's conditions were stable, being treated with medications, and that she was capable of all daily activities. The ALJ also detailed the clinical findings of the other health care professionals in the record who similarly reported that Petitioner's conditions were stable, being treated with pain medications, and that Petitioner was able to ambulate independently, had a normal gait, and negative straight leg raise.

The ALJ gave "great weight" to the State Agency Disability Determination Services' (DDS) opinions that conclude the record showed the Petitioner's depression was not severe and that she can perform a range of sedentary work consistent with the RFC. (AR 20-21.) The ALJ gave "some weight" to the lay statement submitted by Petitioner's husband describing Petitioner's daily activities and his observations of her symptoms. (AR 21.) While the ALJ found this statement was consistent with other documentation in the file, the ALJ noted it was not objective evidence.

Ultimately, the ALJ concluded that Petitioner's degenerative disc and joint disease would result in a number of physical limitations but that there is little evidence to support a finding that Petitioner would be unable to sustain work requiring only those limited physical demands consistent with his RFC determination in this case. (AR 21.)

Based upon his RFC finding, the ALJ next found that Petitioner was not able to perform her past relevant work as a grocery store deli department manager. (AR 21.) If a

claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience.

After evaluating the record and considering the hypothetical posed by the Vocational Expert, Petitioner's age, education, work experience, and the RFC, the ALJ determined the Petitioner was able to perform sedentary work as an inventory clerk, information clerk, and food checker, all of which are sedentary jobs available in significant numbers in the national economy. (AR 22.) Consequently, the ALJ determined Petitioner was not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which…has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Id*. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's

credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner raises two issues for review: (1) the ALJ failed to properly evaluate the opinion of Petitioner's treating physician, Dr. Fields, and (2) the ALJ's credibility findings were defective. (Dkt. 16.)

**1.     The ALJ Properly Considered the Opinion Evidence in the Record**

Petitioner argues the ALJ failed to properly evaluate the opinion of her treating specialist, Dr. Fields, consistent with the regulations, Agency policy, and Ninth Circuit precedent. (Dkt. 16, 21.) Respondent maintains the ALJ correctly weighed the medical evidence and determined that Dr. Fields' opinion deserved little weight, because it was inconsistent with other medical evidence. (Dkt. 20.)

In social security cases, there are three types of medical opinions: "those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and

is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also* SSR 96-2P, 1996 WL 374188, at *1 (S.S.A. July 2, 1996) (stating that a well-supported opinion by a treating source which is not inconsistent with other substantial evidence in the case record "must be given controlling weight; i.e. it must be adopted.").

ALJs generally give more weight to medical opinions from treating physicians, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations...." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Thus, the opinion of a treating source is generally given more weight than the opinion of a doctor who does not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Should the ALJ decide not to give a treating physician's medical opinion controlling weight, the ALJ must weigh it according to factors such as the nature, extent, and length of the physician-patient relationship, the frequency of evaluations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Trevizo*, 871 F.3d at 676; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Although a "treating physician's opinion is entitled to 'substantial weight,'" *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted), it is "not

binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Rather, an ALJ may reject the uncontradicted opinion of a treating physician by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (citation omitted); *see also* SSR 96-2P, 1996 WL 374188 at *5 ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Nonmedical or other source opinions are not entitled to the same deference as acceptable medical source opinions. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing 20 C.F.R. § 404.1527; SSR 06-03p). Other sources include nurse practitioners, physical therapists, occupational therapists, licensed practical nurses (LPN), and registered nurses (RN). *See* 20 C.F.R. § 416.913(a) (defining acceptable medical sources as licensed

physicians, psychologists, optometrists, and podiatrists). The ALJ may discount testimony from "other sources" if the ALJ "'gives reasons germane to each witness for doing so,'" supported by substantial evidence in the record. *Id.* However, an ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

### A.    Dr. Gail Fields' Opinion

Dr. Fields, an orthopedic surgeon, saw Petitioner on August 28, 2014, to evaluate her multiple pains, primarily in both knees and ankles. (AR 373-74.)[2] Dr. Fields reported Petitioner was born with a club right foot; has problems with her left foot; and has undergone numerous surgeries on her ankle, feet, and knees. On examination, Dr. Fields noted Petitioner has "a lot of instability." (AR 373.) X-rays of Petitioner's ankle show a severe talar tip with coalition impingement of the fibula and talus in the area where she has most of her pain. Petitioner complains of pain in both knees with the right being worse. Upon examination of her knees, Dr. Fields observed no effusion but range of motion has marked patellofemoral crepitus without instability to range of motion 0 to 130 degrees. X-rays of both knees revealed advanced degenerative disease with the right knee being worse due to bone on bone in the medial compartment. The left knee has a lot of osteophytes and the lateral compartment is starting to break down. At this visit, Dr. Fields recommended

---

[2] The ALJ incorrectly refers to Dr. Fields using feminine pronouns; an inaccuracy that is immaterial to the merits of the issues presented. In this Order, the Court will refer to Dr. Fields using masculine pronouns.

surgery on Petitioner's left ankle and both knees.

On February 3, 2015, Petitioner returned to see Dr. Fields, at which time he recommended surgery and/or physical therapy to address her conditions. (AR 375.) Petitioner elected to pursue physical therapy and hold off on surgery as long as she could do so. On that same day, Dr. Fields completed a Medical Source Statement – Physical (MSS) on which he indicated Petitioner had constant pain in her knees and left ankle and noted she had depression. Dr. Fields opined that Petitioner could stand/walk and sit for 0-2 hours during an 8-hour work day; needs a job that permits shifting positions; could occasionally lift less than ten pounds; and, can only rarely twist, stoop, or crouch/squat, and never climb ladders or stairs. (AR 579-80.) Dr. Fields further opined that Petitioner's pain/symptoms are severe enough to frequently interfere with attention and concentration needed to perform simple work tasks, she is "incapable of even 'low stress' jobs," and she would miss more than four days per month from work as a result of her impairments or treatment. (AR 581.)

In making the RFC determination, the ALJ gave Dr. Fields' 2015 opinion concerning Petitioner's functional limitations little weight for two reasons. First, "the other evidence of record does not support [Dr. Fields'] opinion" because "[s]everal other doctors who have ongoing treatment relationships with [Petitioner], show very different clinical findings including a normal gait, negative straight leg raise, and a stable condition treated by medication." (AR 20.) Second, Dr. Fields did not treat Petitioner for depression, is not a mental health specialist, and never suggested any finding leading to a functional

restriction due to depression. (AR 20.) Petitioner argues the ALJ did not give proper weight to Dr. Fields' opinion as a specialist and treating physician; provide sufficient reasons for rejecting Dr. Fields' opinion; or consider the factors set forth in 20 C.F.R. § 404.1527(c).[3]

## B. The ALJ Gave Proper Weight to Dr. Fields' Opinion

### 1. Dr. Fields' Opinion was Inconsistent With the Reports of the Other Treating Doctors

Where, as here, a treating or examining physician's opinion is contradicted by other physicians, the ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Trevizo*, 871 F.3d at 675; *Ryan*, 528 F.3d at 1198. The ALJ has done so here.

The ALJ's decision provided a detailed, complete, and accurate summary of the facts and medical records, including the opinions of all the physicians who examined and treated Petitioner. (AR 18-21.) Dr. Fields' 2015 opinion regarding Petitioner's functional limitations, however, was inconsistent with the opinions and reports of Petitioner's many other treating doctors contained in the record. The ALJ specifically pointed out the conflicting evidence in the record, and explained his findings and reasoning for giving little weight to Dr. Fields' opinion – namely that Dr. Fields' 2015 opinion regarding Petitioner's functional limitations was at odds with the reports of other treating doctors.

---

[3] The Social Security Administration recently revised its criteria for evaluating medical opinion evidence. For claims filed before March 27, 2017, the rules in 20 C.F.R. § 404.1527 apply. Petitioner's claim was filed on December 4, 2014. The regulation differentiates between acceptable medical sources, defined as licensed physicians and certain other qualified specialists, 20 C.F.R. § 404.1513(a), and nonmedical sources, such as physician assistants.

As the ALJ stated in his decision, the medical reports from Petitioner's other treating doctors all show Petitioner was responding to pain medication for her joint pain and was able to walk with a normal gait. In particular, the ALJ pointed to Dr. Nielsen's records, who Petitioner acknowledged at the hearing was her primary care doctor. (AR 38.) Dr. Nielsen examined Petitioner during the same timeframe as Dr. Fields and reported that Petitioner's osteoarthritis and joint pain were "stable." (AR 19 and Exs. 6F, 9F.) The ALJ specifically detailed the reports of Dr. Porot, another treating doctor, who noted Petitioner's conditions were "stable," Petitioner was tolerating all of her treatment medications well, was capable of performing all daily activities, and was looking for work. (AR 20-21.) The ALJ also identified other treatment providers in the record who examined the Petitioner and reported her osteoarthritis condition was again "stable" and being treated with pain medication, her gait was normal, and she was able to ambulate independently. (AR 19-20, 497, 499.)

Based on the foregoing, the Court finds the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for his decision to give little weight to Dr. Fields' 2015 opinion when making the RFC determination based on the fact that Dr. Fields' opinion was contradicted by the reports of the other treating doctors and health care professionals contained in the record. *See Trevizo*, 871 F.3d at 675.

### 2.     The ALJ Properly Considered the DDS Opinions

Petitioner argues the ALJ erred by relying on the DDS opinions to rebut Dr. Fields' opinion, because the DDS physicians did not examine or treat Petitioner and did

not have access to the entire record; in particular, records relating to Petitioner's pain management and Dr. Fields' 2015 opinion. (Dkt. 16 at 9, n. 4 and p. 16 n. 6.) The Court disagrees.

In making the RFC determination, the ALJ gave "great weight" to the DDS opinions which found that Petitioner's depression was not severe and that Petitioner could perform a range of sedentary work. In doing so, the ALJ recognized that the DDS physicians had reviewed only the records available up to early 2015; with the notable exception being they did not have Dr. Fields' 2015 opinion from the MSS.[4] The ALJ found that the records reviewed by the DDS physicians, which comprised nearly all of the medical records in this case, "did not show any objective symptoms of depression or resulting functional limitations" and that the record supported the DDS opinions regarding the range of work Petitioner was capable of performing. (AR 20.) More importantly, the DDS opinions were consistent with the opinions and reports of the other treating physicians in the record, including the doctors who examined and treated Petitioner both before and after Dr. Fields' 2015 opinion.

While the opinion of a treating source, like Dr. Fields, is generally given more weight than the opinion of a non-treating doctor, such as the DDS physicians, the ALJ gave specific and legitimate reasons for giving little weight to Dr. Fields' opinion and also explained the specific reasons for giving the DDS opinions great weight – namely that the

---

[4] It appears, however, the DDS reviewer at the reconsideration level did have Dr. Fields' medical report from his examination of Petitioner on August 28, 2014. (AR 83, 96, 373.)

DDS opinions were consistent with the reports from Petitioner's treating and examining physicians other than Dr. Fields. That the DDS physicians did not have Dr. Fields' 2015 opinion does not negate the fact that the DDS opinions were consistent with the reports of Petitioner's many other treating doctors, including those who examined and treated Petitioner after Dr. Fields. For these reasons, the Court finds the ALJ properly considered the DDS opinions.

### 3.    The ALJ Considered the Regulatory Factors

Petitioner claims the ALJ committed reversible legal error by failing to consider and apply the statutory regulatory factors set forth in 20 C.F.R. § 404.1527(c) when he evaluated Dr. Fields' 2015 opinion with respect to Petitioner's functional limitations in making his RFC determination. (Dkt. 16, 21.) The Court disagrees.

When analyzing medical opinions and opinions on medical issues, the ALJ must consider various factors, including the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the amount of evidence presented by the physician to support the opinion, consistency of the opinion with the record as a whole, whether the opinion was provided by a specialist about medical issues related to his or her area of specialty, and any other factors that tend to support or contradict the opinion. *See Trevizo*, 871 F.3d at 676; 20 C.F.R. § 404.1527(c)(2). However, an "ALJ is not required to make an express statement that she considered all the factors outlined in 20 C.F.R. § 1527(c)." *Kelly v. Berryhill*, 732 F. App'x 558, 562 n. 4 (9th Cir. 2018).

In this case, the ALJ stated in his decision that he considered all of the opinion evidence in the record in accordance with the requirements of 20 C.F.R. § 404.1527. (AR 18.) While he did not expressly list the factors, the ALJ discussed the § 404.1527 factors throughout his decision. For instance, the ALJ noted when and how frequently the Petitioner saw Dr. Fields – once on August 28, 2014 and again on February 3, 2015. (AR 19.) The ALJ discussed the nature and extent of Dr. Fields' examinations of Petitioner's knees and ankles, which involved taking x-rays as well as a clinical examination where the doctor reported his observations of Petitioner's physical impairments. The ALJ considered Dr. Fields' conclusions regarding Petitioner's impairments and the impact of those impairments on her ability to work. Ultimately, however, the ALJ gave Dr. Fields' opinion little weight because it lacked support in the record and was inconsistent with the findings and reports of the many other doctors who also had ongoing treatment relationships with Petitioner. The ALJ detailed the reports of the other treating doctors noting the duration and frequency with which Petitioner saw each of them, the nature and extent of the treatments provided by those doctors to Petitioner, the evidence supporting their opinions, and consistency of their opinions with the record as a whole. (AR 19-20.) Notably, the ALJ highlighted the reports from doctors who treated Petitioner both before and after Dr. Fields, stating Petitioner was able to ambulate independently, had a normal gait, and was responding to traditional treatments including pain medication. (AR 20.)

With regard to the DDS opinions, the ALJ considered the factors in §§ 404.1527(c)(3) and (6) requiring that he consider the degree to which nonexamining

sources consider all of the pertinent evidence and provide supporting explanations for their medical opinions and the extent to which the medical source is familiar with the other information in the record. As stated previously, the ALJ recognized the DDS physicians had only Petitioner's records up to early 2015 and did not have Dr. Fields' MMS. (AR 20.) The ALJ accurately concluded, however, that the DDS opinions were consistent with the records of Petitioner's treating physicians, save Dr. Fields, with regard to Petitioner's functional limitations and the severity of Petitioner's depression. (AR 20-21.) The ALJ, therefore, properly considered the degree to which the DDS physicians had considered all of the pertinent evidence, explained their medical opinions, and their level of familiarity with the other information in the record.

### 4. The Petitioner's Depression Diagnosis was Extraneous to the ALJ's Determination

Petitioner claims the ALJ's second reason for discrediting Dr. Fields' 2015 opinion – that Dr. Fields was not a specialist in mental health and did not treat Petitioner for depression – was improper, because it misreads Dr. Fields' opinion in the MSS, was an improper lay-analysis, and lacks evidentiary support. (Dkt. 16.)

Petitioner was diagnosed with reactional depression in December 2008 by Dr. Price and received ongoing treatment for depression. (AR 334.) Dr. Fields noted Petitioner's depression diagnosis by checking a box on the 2015 MSS. (AR 581.) There is no dispute that Dr. Fields is not a mental health specialist and, therefore, not qualified to opine regarding Petitioner's depression. To the extent Dr. Fields' 2015 opinion relied on

Petitioner's depression, that would be a specific and legitimate basis for giving little weight to Dr. Fields' opinion.

Regardless, Petitioner's depression was not germane to the ALJ's RFC determination. The ALJ concluded at step two of the sequential process that Petitioner's depression was non-severe and that it did not cause more than a minimal limitation on her ability to perform basic mental work activities. (AR 16.) Petitioner has not challenged the ALJ's finding in this regard. Because Petitioner's depression was non-severe, the ALJ appropriately did not considering depression in the ensuing steps of the sequential process; including when making the RFC determination.

Further, the ALJ's decision to give little weight to Dr. Fields' opinion was based on specific and legitimate reasons, supported by substantial evidence in the record – namely, that the records of the other treating doctors contradicted Dr. Fields' 2015 opinion concerning Petitioner's impairments and their impact on her ability to work. While Petitioner disagrees with the ALJ's view of the record, the ALJ identified specific and legitimate reasons, supported by substantial evidence in the record from the other treating healthcare professionals to support his decision to give Dr. Fields' 2015 opinion little weight.

### 5. The ALJ Properly Considered Petitioner's Limitations

Petitioner claims the ALJ failed to properly consider the limiting effects of all her impairments. Specifically, Petitioner argues the external and non-external limitations in Dr. Fields' 2015 opinion were not presented to the Vocational Expert or considered by

the ALJ. (Dkt. 16 at 6-7.) The Court disagrees.

The Vocational Expert testified at the hearing regarding Petitioner's external and non-external limitations consistent with the record and after having considered Petitioner's testimony regarding her pain and functional limitations. (AR 48-54.) The Vocational Expert concluded Petitioner would not be able perform the medium level physical demands of her prior position as a deli manager due to her feet and knee pain but that Petitioner had the RFC to perform sedentary jobs with some postural restrictions. (AR 49-52.) While the Vocational Expert did not have Dr. Fields' 2015 opinion before he testified at the hearing, the Vocational Expert had considered the DDS opinions which stated Petitioner could: occasionally lift and carry ten pounds; frequently lift and carry less than ten pounds; could stand and walk about two hours; sit about six hours in an eight hour day; and that she could push and pull, including the operation of hand or foot controls, unlimited except as reflected in her ability to lift and carry; and that she has certain postural limitations. (AR 51.) Those opinions were consistent with the medical records from Petitioner's several other treating doctors, aside from Dr. Fields. The Vocational Expert's testimony regarding Petitioner's external and non-external limitations was, therefore, accurate and consistent with the medical evidence in the record from Petitioner's other treating physicians.

Likewise, the ALJ gave proper consideration to the practical effects of all Petitioner's limitations that were supported in the record. As discussed above, the ALJ correctly weighed the medical evidence in the record. Dr. Fields' 2015 opinion was given

little weight because it was inconsistent with the reports from Petitioner's other treating doctors, particularly with regard to Petitioner's ability to ambulate independently, walk with a normal gait, perform daily activities, and the findings that her conditions were "stable" and being managed with treatment and medications. The ALJ also considered the vocational expert's testimony from the hearing concerning Petitioner's limitations in his decision. (AR 21-22.) The ALJ discussed the practical effects of each of Petitioner's limitations, setting forth the specific and legitimate reasons and substantial evidence in the record supporting the RFC determination that Petitioner could perform sedentary work with certain postural limitations.

The Court finds the Petitioner's external and non-external limitations were properly considered.

### C. The ALJ Properly Developed the Medical Record

Petitioner argues the ALJ's rational for rejecting Dr. Fields' 2015 opinion, and his determinations concerning her impairments, improperly relied on a highly selective recitation of the record and his own lay judgment about the medical evidence. Petitioner asserts the ALJ should have obtained testimony from a medical expert, sent the file back to the Agency's nonexamining consultants for review of the entire file, arranged for a consultative examination, or sought further clarification from Dr. Fields. (Dkt. 16 at 16-17.)

"The ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'"

*Tonapetyan v. Halter*, 242 F.3d 1144, 1151 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). This duty is triggered only when there is ambiguous evidence or when the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. *Id.* at 1150; *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Neither triggering event is present in this case.

Petitioner has not pointed to any ambiguity in the evidence and the ALJ did not find the evidence in the record was inadequate for proper evaluation. Instead, Petitioner disagrees with the ALJ's review of the record and resulting decision; arguing if the ALJ had questions regarding Petitioner's impairments or the consistency of Dr. Field's opinion, the ALJ should have further developed the record. (AR 16.) The evidence in the record, however, is not ambiguous, nor is it inadequate to allow for proper evaluation. As discussed above, the ALJ's decision to give little weight to Dr. Fields' 2015 opinion was supported by specific and legitimate reasons based on substantial evidence in the record. Namely, the reports from the several other treating doctors and health care workers which contradicted Dr. Fields' 2015 opinion. The medical evidence in the record was unambiguous and adequate to allow the ALJ to properly evaluate Petitioner's impairments and Dr. Fields' 2015 opinion. Accordingly, the ALJ's duty to further develop the record was not triggered.

Further, Petitioner did not raise this issue to the ALJ. (AR 31-32.) At the beginning of the November 30, 2016 hearing, the ALJ confirmed with the parties that he had all of the relevant records, to which Petitioner's attorney stated: "The record's

complete." (AR 32.) The ALJ also asked Petitioner herself at the hearing about the existence of other medical records and she responded that she was not aware of any other records that were not in the file. (AR 39-40.) At the conclusion of the hearing, Petitioner asked for the record to remain open for ten days so she could submit an additional medical source statement. (AR 54.) It appears Petitioner did in fact submit an additional document in the record - Dr. Fields' 2015 MSS – after the hearing, which is included in the record and was considered by the ALJ in his decision. (AR 31) (Exhibits 1F-11F were admitted at the hearing. The MSS containing Dr. Fields' 2015 opinion is Exhibit 12F in the record.).

No other records were submitted nor did Petitioner make any other request of the ALJ to obtain additional medical expert testimony, request the non-examining consultants to review the entire file, obtain a consultative examination, or re-contact Dr. Fields for clarification. By failing to preserve those issues before the ALJ, Petitioner waived the same on appeal. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) ("Appellants must raise issues at their administrative hearings in order to preserve them on appeal before this Court.").

## 2. The ALJ's Credibility Determination Was Proper

Petitioner argues the ALJ's credibility finding was generally defective for not giving proper weight to Dr. Field's opinion and was also specifically defective because it failed to consider Petitioner's work history when evaluating her credibility and the consistency of her complaints with the record. (Dkt. 16, 21.)

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001). "The ALJ's findings, however, must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). An ALJ's assessment of claimant credibility is entitled to "great weight." *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *see also Nyman*, 779 F.2d at 531. "When evidence reasonably supports either confirming or reversing the ALJ's decision, [courts] may not substitute [their] judgment for that of the ALJ." *Batson*, 359 F.3d at 1196.

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina*, 674 F.3d at 1112. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citations and internal quotation marks omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.*

Here, the ALJ summarized Petitioner's subjective complaints as follows:

> [Petitioner] alleges that she is no longer able to walk well because her feet, legs and knees hurt. She does household chores when she can, but the family helps when her pain is increased. She…does not have a social life because she is in daily pain. She…does not get out much due to the pain. At the hearing, she testified she needs to change positions from sitting to

standing and back again. She could lift a maximum of 15 pounds and cannot sleep at night due to pain.

(AR 18-19.) The ALJ found Petitioner had satisfied the first step in the analysis but rejected her testimony about the severity of her symptoms at the second step, finding:

[Petitioner's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Petitioner's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(AR 19.) The ALJ was, therefore, required to provide specific, clear and convincing reasons for rejecting Petitioners statements about the severity of her symptoms. *Molina*, 674 F.3d at 1112.

"General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (citation omitted); *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").

"In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "An ALJ is not required to believe every allegation of disabling pain or other non-exertional

impairment. However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (internal quotation marks and citations omitted). The ALJ is required to "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* (alterations in original and citations omitted). "Where, as here, the ALJ did not find affirmative evidence that the claimant was a malingerer, those reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* (internal marks and citations omitted). "[P]roviding a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Additionally, the ALJ must "elaborate on which daily activities conflicted with which part of Claimant's testimony." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

"In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation." *Molina*, 674 F.3d at 1112. "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.*; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (The Court may consider Petitioner's reputation for truthfulness, claimant's work record, and testimony from physicians and third parties

concerning the nature, severity and effect of the symptoms of which claimant complains.).

In this case, the ALJ detailed the specific, clear and convincing reasons for rejecting Petitioner's testimony.

As discussed above, the ALJ properly set forth the reasons for giving little weight to Dr. Fields' 2015 opinion based on the specific inconsistencies between Dr. Fields' opinion and those of the other treating physicians in the record. Likewise, the ALJ gave specific, clear and convincing reasons for rejecting Petitioner's statements because they too were inconsistent with the medical records of her treating physicians, aside from Dr. Fields, and other health care professionals. *See Carmickle v. Comm'r, Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Molina*, 674 F.3d at 1112 (In evaluating the claimant's credibility, "the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct."). The ALJ detailed the specific inconsistencies in the record between Petitioner's statements concerning the intensity, persistence, and limiting effects of her symptoms and the contradicting evidence in the record thereby providing clear and convincing reasons for discounting Petitioner's subjective complaints. (AR 18-21.)

For example, the ALJ noted Dr. Porot's report from 2011 indicated Petitioner was capable of all daily activities, her pain number was not consistent with her demeanor, and her condition was "stable." (AR 20, 459.) Later, in 2016, the records show Petitioner had

a normal gait, was able to ambulate independently, and that she had reported to Dr. Zoe that her knee pain had been eliminated after the administering of nerve blocks. (AR 20, 497, 499.) The ALJ gave some weight to the third-party statement of Petitioner's husband who reported Petitioner does household chores with some rests, is able to leave the house alone a few times a week, and is able to concentrate and pay attention. (AR 21.)

In regards to Petitioner's specific argument, the Court finds the ALJ gave proper consideration to Petitioner's work history. At the hearing, the ALJ inquired of Petitioner regarding her work history and the Vocational Expert also testified about the same. (AR 36-37, 49-50.) The ALJ's decision notes that Petitioner worked consistently between 1992 and 2010 and that, for the first 22 months she alleged disability, Petitioner "worked as a deli counter manager earning substantial gainful activity." (AR 15, 21.) The ALJ also pointed to medical records of treatment providers to whom Petitioner had told she was looking for work. (AR 29.)

Based on the foregoing, the Court finds the ALJ's credibility determination properly set forth specific, clear and convincing reasons for rejecting Petitioner's testimony about the severity of her impairments. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (recognizing ALJ may consider "whether the alleged symptoms are consistent with the medical evidence" and "whether the claimant engages in daily activities inconsistent with the alleged symptoms" in assessing credibility of subjective complaints).

## <u>ORDER</u>

Based upon the foregoing, the Court being otherwise fully advised in the premises,

**it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is

not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the

Petition for Review is **DISMISSED**.

DATED: August 9, 2019

Honorable Candy W. Dale
United States Magistrate Judge